Our next case is Roderick Jamar Jenkins versus the United States, 2022, 1378. Mr. Brewton. Good morning. May it please the court. Hunter Brewton on behalf of plaintiff appellate Mr. Jenkins. The Fifth Amendment's takings clause requires compensation when the federal government physically appropriates property and does not return it. And as the magistrate in the United The due process clause places limits on the United States handling of property that holds for investigation or forfeiture. Isn't there a police power exception to the takings clause? So we can dive right into Frayne and Connors. I think this is a good illustration of the limits of the police power exception. So starting in Frayne, I can't articulate it better than the Third Circuit. Although the police may seize potential evidence using a warrant, they may not keep it forever. So to put a finer point, I think there's two points from Frayne They didn't intend to keep it forever. They sent a notice to the mother and the son that they were through with the cause and that they can be reclaimed. So two points on that factually. One, the United States did not send any notice. That was found by the magistrate below. And the due process right runs from the United States, not from an impound lot. And on the state notice, which is irrelevant to the due process claim, the United States and actually didn't comply with that from the beginning. They have to give notice within five days of the seizure, and they never did. They also didn't give any notice to the son, right? Correct. The United States never gave notice to Mr. Jenkins and Mr. Jenkins... Nobody gave notice to Mr. Jenkins. The impoundment lot, the state, the United States, nobody gave notice to him, right? Correct, Your Honor. So what's the action and the date of the taking here? Is it the day after they no longer needed the cars for the case? Or is it when the cars were sold or some other date? So the takings occurs once the United States no longer has a forfeiture or investigative purpose. And when that purpose dissipated will be a factual question at the just compensation hearing, because sometimes the United States, even after a criminal proceeding ends, will still seek forfeiture. But the doctrinal point is once the United States no longer has an investigative or forfeiture purpose, they have to return the property or provide just compensation. So, and we know the United States can't avoid liability under physical appropriation by handing it over to a third party. Horn's established in that. The residual rights that Mr. Jenkins may have held in the property vis-a-vis the impound lot are irrelevant to whether there's a takings claim against the United States. As I understand it, if there's a federal remedy, you have to exhaust it. And there was a remedy as long as the government actually held the property through its agent, the impoundment lot. So I'm not understanding how there could be a taking immediately after they no longer needed it when there was this rule 41 remedy, which was available to the defendant. So three points on rule 41. One on the actual facts, Mr. Jenkins did pursue a rule 41 G remedy and the United States defeated it by saying, we're going to give you back the property months later. He didn't do it immediately after his sentencing. Right. Well, he was told that the, he was told until 2017, the United States was going to give him back the property. So he was waiting because again, you don't seek rule 41 G until the United States doesn't have an investigative or forfeiture. But until the property was sold, he had a rule 41 remedy, right? And once the United, the record is unclear when the DEA relinquished the holds, but once the United States no longer has custody of the evidence, there's no rule 41 G remedy. It has to be in the United States custody because it's in room jurisdiction. But I thought your theory was that the empowerment law was the agent of the United States. No respectfully, that's incorrect. Your honor on the takings clause issue on the takings clause issue. Once there was a physical appropriation, the government has the burden of staying within the historical exception for police power, which is only when the investigative or forfeiture purpose exists. I think you're got a big problem if you're not viewing the impoundment law as the agent. So there were allegations of the impound lot was an agent of the government. We think that can be relevant to the due process clause claim. Our first line on takings is the one I just reiterated, which is that the United States, once it physically appropriates it, if it doesn't have a purpose to hold it anymore, it has takings liability. They appropriated it. You admit they had a legitimate purpose when they first appropriated it. They gave it to the impoundment law. And if they have no control or responsibility for the impoundment law, how are they engaging in any action that constitutes a taking? Two points, one on Eighth Circuit precedent and one on federal law. Under Eighth Circuit precedent, Hall and Bailey explained that the federal government is always responsible for evidence it initially seizes for custody in a criminal trial until it turns it over or, to the second point, follows established federal forfeiture proceedings. Here, the magistrate found the United States did not follow any forfeiture proceedings. And that's what takes us outside the scope of the police power exception as well. Regarding due process, it doesn't seem to be a money mandating statute supporting that argument, nor was there money exacted. Was there? So we're not raising a money mandating. Illegal exaction? On the money mandating, we're not raising a money mandating claim on the bill. On the impound lot, under the auspices of the federal government holding them for evidence and investigative. How can that be a due process exaction? You admit they took the cars properly in the first place. They soon thereafter, as I understand it, turned it over to the impound lot, certainly before the sentencing. So what was, you're suggesting something wrong with their turning it over to the impound lot? That makes no sense. As long as the United States maintains holds on the property, it's fine to have it at the impound lot. But there's a factual question about when the holds were released, which would be discussed on remand if the due process claim is remanded. And that is, if the United States at some point said, we give up our holds, you can sell the cars if you want to, that would be an illegal exaction because there's no source of federal law that allows the United States to do that. Now, the takings clause is naturally the easier fit here on the facts. If I may go back to Frayne, which the court- I'd like to go back to Frayne because I think I understand how it supports your claim, but of course that's Third Circuit law. Is that consistent with what we've said, for instance, in Amerisource, where we say property seized and retained pursuant to the police power is not taken for a public use in the context of the takings clause? I think Judge Bibas said exactly the opposite under Third Circuit law. So under this circuit's law, the key word there was retained. The United States stays within the police power exception as long as it retains the evidence. Now, I think, again, Judge Bibas makes a good point about if you're holding something for a public trial, of course it's a public use, but the court doesn't have to reach that issue here because the police power exception under this court's evidence only protects the government if it is retaining the evidence or seeking forfeiture. So when they turned it over to the impoundment lot, now they don't have the protection of what we said in Amerisource? Is that your argument? If they are completely relinquishing the evidence, if they're not retaining the evidence, right? So cannot- I'm not sure I understand that, but the question I really want to understand is, isn't our law different, at least as articulated in Amerisource, than what the Third Circuit said? We seem to be saying that if you have a proper exercise of the police power at the time you seize the property up front, there is no takings. There's no takings concern after that point. Isn't that our law, and doesn't that defeat your claim? So no, Your Honor, because in each of those cases, the government either sought forfeiture or returned the property, and it was that return or seeking forfeiture which kept the United States within the exception. I think another way to put it doctrinally is once a physical appropriation occurs, there is automatically a taking, and the just compensation obligation is told or held only for the time that the government has a very narrow valid historical purpose. And we know from Cedar Point Supreme Court- All right, yes, thank you. I did have another question for you. If the property has been abandoned, there cannot have been a taking. Isn't that right? If that is a state law question under Minnesota law, and here the question, if it's been abandoned, can there be a federal takings claim? If it has been completely abandoned, and there's a factual finding on that point, that wouldn't be a cognizable takings claim. So what is the record here? It's very confusing to me whether the district court found abandonment or whether that was even litigated here. So abandonment wasn't addressed because the district court found specifically that Mr. Jenkins had a cognizable property interest in both the vehicles, and they found that he pursued his remedies and never gave them up, right? We know until 2017 when the United States learned that they no longer had the vehicles, he was asking for the vehicles back. Okay, so why here we have a situation in which the vehicles were no longer needed after he was sentenced, correct? The government no longer had an interest in retaining Do you agree with that? I assume so. Yeah. Okay, so it was more than six months after that that he filed a Rule 41 motion, right? Correct. So I guess one argument that the government might make is that doing nothing in that six-month period amounted to an abandonment of the property, and then it was properly sold to satisfy the storage charges. So what's the matter with that argument? Why isn't it an abandonment to wait six months to file the Rule 41 motion? So four points on that. I say I'm running into my rebuttal time. The factual finding point, which I already pointed out, which the United States doesn't see clear review on. And then on Rule 41g, that's a merits argument that was waived and a stop to blow because the United States said they'll give back the property. Under NIC, which is the Supreme Court precedent, regardless of post deprivation remedies, which includes Rule 41g, you have a takings time. No, no, no. NIC says specifically that if there is a federal exhaustion requirement, you have to follow that. And the argument here, as I understand it, is that Rule 41 is a remedy that has to be exhausted. And that remedy is available as long as the government has the property. And the government has the property as long as it's in the impoundment bond. So it would seem to me that there's a pretty good argument that under Rule 41 that you have a remedy at least until the government has sold the property through the impoundment bond. Maybe at that point, there's a taking. Maybe at that point, there's no longer a remedy to exhaust. But up until that time, isn't there a remedy to exhaust? So two points, and then I'll rest unless there's further questions. He filed two pro se motions for 41g return. The United States defeated both of them by saying, we will return the property. We are going to give the property back to you. No, I'm not addressing my point. He didn't make the motion until more than six months after the government no longer needed the property. The question is, why isn't waiting six months an abandonment? Because, Your Honor, there was no factual finding that the United States didn't need the property. As illustrated by this court's property for seven, 10 years after a prosecution. So until the United States represents that it's relinquishing its holds on the vehicles, Mr. Jenkins can still file his Rule 41g motion. You seem to suggest that there was a factual finding that your client did not abandon the property, that they're not challenging for clear error. What is it that you think was found by the district court on whether your client abandoned the property, which I understand to be related to whether or not he had notice and an opportunity to get the property back. What did the district court find? The district court found Mr. Jenkins had a property, cognizable property interest in both vehicles. That's a bending statement. But that doesn't say anything. I don't think about whether he later abandoned that property interest. Right. But the United States below did not say he abandoned the interest, right? They said they were going to return the property to him all the way through the proceedings below. Well, they at least suggest to us now, maybe you can argue it's too late, that your client said during the criminal proceedings at A92, I was informed to go pick up both motor vehicles. So I'll point the court to our footnote on this. They didn't ask for judicial notice of the criminal findings. That's a fact issue to be determined in the civil case. You can't take judicial notice of facts that are just said in a separate proceeding. So what would you have me do? If I agree with you that you have a takings claim here, but I can't tell whether your client had adequate notice and therefore whether he abandoned whatever property right he had, what do I do? Is that resolvable on my record or do I have to send it back? So we maintain that it's resolvable on the record, but the court can remand the case for factual finding if there are fact-finding issues that have been determined below. Yes. We'll give you three minutes for rebuttal. Ms. Birkland, we're happy to see you here. Thank you. Good morning, your honors, and may it please the court. Melissa Birkland on behalf of the United States. The seizure of automobiles connected to a criminal investigation represented a valid exercise of the government's... No one's disputing that. The question is whether the retention of them beyond the period that they were needed for the sale of the vehicles constitutes a taking. Certainly, your honor. So I would point your honors to appendix that starts at 104. We submitted during the district court level an affidavit of the impound lot owner and then also the notices that the impound lot owner sent to the registered owner of the vehicle, who was Stephanie Buchanan, and the impound lot owner represented that the hold that the government had on the cars was released about 10 days before Mr. Jenkins was sentenced. So I think the timeline is really critical here, as it is in any takings examination. The cars were seized in October 2012. So if they no longer needed them 10 days before the sentencing, let's assume that, then why isn't the continued retention of them and the eventual sale of them a taking? Your honor, it's not a taking. And I would point to the United States Department of Justice's seizure and forfeiture manual. Even though it broadly discusses forfeiture proceedings, it also discusses at chapter one, what happens when the United States decides not to forfeit an item. And this was cited in Mr. Jenkins' brief, but there's essentially three options that the initiate abandonment procedures, or otherwise dispose of it in accordance with law. And what our argument is, is that we're looking at prong three, otherwise dispose of it in accordance with law. And then we turn to the Minnesota state statute. Which can't have anything to do with the government's obligation to give notice. I mean, the Minnesota state statute doesn't govern here in the takings context. Well, your honor, it may because the statute describes that the impound lot owner or the government. Let's put that aside. Let's forget about that. Okay. It seems to me the question is, well, there are multiple questions here, but under the Seventh Circuit case, the liability for a taking doesn't exist if there was an abandonment, right? Is the government arguing that there was an abandonment of the vehicles by the defendant here? Your honor, I think there's very strong facts to support that there was an abandonment. Consistent with Conyers, there was notice given to the property owners, and if they did not... I want you to forget about that notice because it seems to me that notice was not adequate. That's not the kind of notice that was involved in the Seventh Circuit case. Assuming that he did not get any notice and that he should have gotten notice, was there an abandonment nonetheless because he knew that he could bring a Rule 41 proceeding? I think exhausting his Rule 41 proceedings was critical in this matter. Two points. The Rule 41 statute dictates that the motion be brought within the jurisdiction that the property was seized from. Even though he was prosecuted in the District of North Dakota, I think there's an argument to be made that he was in the wrong jurisdiction. Second, he brought it... I don't even think it was months. I don't have the date in front of me, but it was years following the finalization of his criminal proceedings. I think it was about six months afterwards. Okay. And at that point, the impound lot disposed of the property within its obligations under Minnesota state law at about six months. Forget about state law. Okay. It's not going to cut. Okay. Could I follow up on 41? Didn't you argue below and defeat the motion based on the didn't have the property any longer? Yes, Your Honor. So how can we now turn around and fault him for not prevailing on his Rule 41 motion? Aren't you judicially stopped for making these arguments? Your Honor, I don't believe that the United States can be judicially stopped from essentially making a quick claim promise to Mr. Jenkins at the lower court level. We were saying we can give you the property that we have interest in, we no longer had an interest in the property, and we no longer had custody of that property. But your agent did. There's nothing in the record, and I don't know that there's even an ability to support any argument that the impound lot- Let's assume for the moment that the impound lot was the government's agent, okay? Okay. And so you're responsible for what the impound lot did. Okay. Is there an abandonment claim by the government, and what's the basis for it? Well, there's no clear requirement that the United States or its agents need to hold on to property indeterminately. And I think there is a... We would argue, if we were required to say that the impound lot was our agent, that the property was abandoned. I also think it's important that- But why was it abandoned? His failure to make a Rule 41 motion earlier? Something else? What constituted abandonment? Yes, Your Honor. I think if he had timely exhausted his Rule 41 rights, he would have a greater claim. I also think you put yourself at risk if you decide to allow for a non-registered owner of something to come in and claim that there was not adequate notice. We have titling procedures for a reason, and those can supply- Okay. Let's assume he owned vehicles, okay? And under the Seventh Circuit case, it would seem as though the government would have to give him notice in order to claim that there was an abandonment. And there wasn't any notice to him that if he didn't pick up the property within 30 days or 60 days or whatever, that it would be deemed abandoned. That's an element of the Seventh Circuit case, which is missing here. Correct, Your Honor. And I would suggest that to the extent that Your Honors are finding that there wasn't adequate notice if we're reviewing the state law cases, I would try to pivot and make sure that we're always framing this within this court's jurisprudence. Because under Acadia and Amerisource and Camel Maws, there was arguably a much greater deprivation where property was seized for up to years and determined to either- We can come to that, but I'm not ready for you to move off from abandonment.  To show abandonment, are you making that claim? And if so, was that presented below? Do we have a record on it? No, Your Honor. There was not a record made below on abandonment. I believe that- Because you guys did not argue that? No. Our argument below was that the taking lasted up until the hold was released on the vehicles. And then under the Asset Forfeiture Manual, we can look to an impound lot owner to provide notice. Your manual doesn't exactly have constitutional status to it. You're right, Your Honor. Your manual may be desirable from an internal standpoint, but it's not necessarily sufficient constitutional notice. That's correct, Your Honor. And I think under the Tucker Act, there's also important considerations that he is required to clearly stay within the confines of jurisdiction and we wouldn't otherwise be in this court if- Maybe another way to ask the abandonment question is the notice. What is the record on notice and whether he had adequate notice? So there's constructive notice that he has made comments during certain proceedings that he was aware that he needed to go reclaim his vehicles. And then- The contention is you didn't ask the civil court to take judicial notice of those comments. You're right, Your Honor. But his proceeding, because it stemmed from a criminal case, I think that it is appropriate even if we didn't affirmatively ask that the lower court be able to use facts that were established in his criminal proceeding. What facts were established in the criminal proceeding? So there was affidavits that he had presented and filings that he had presented that showed that he had heard that he had noticed that his cars were available to be picked up. When? I believe that would have been at some point in the fall of 2013. The registered owner received a letter prior to her release from custody, so he may have heard it through that way. The letter was sent from the impound lot in October 2013, so I think it's very reasonable that he may have received notice that way. But I don't- You're right, there is not a record on whether or not he received actual notice. So shouldn't, at a minimum, shouldn't the district court here determine whether he received notice that they were available for pickup? He knew they were available for pickup and he didn't do anything for months to get them back until he filed his Rule 41 motion. I think the district court's two orders can be affirmed independent of that inquiry. And that here is what the United States is requesting that this court do. I don't think that we need to develop a record on notice. I think another important component of this is that when we think about a taking, the United States never received the cars permanently and we never received any money for the cars as we would through a forfeiture proceeding. And so that's an important distinction that- If we agree with the Third Circuit's analysis, that even if the initial seizure is a proper exercise of the police power, but at some point if you don't return the property or proceed with forfeiture, it becomes a taking. If we agree with that, do we have to then address the abandonment or notice issue? I think it's slightly different for a Third Circuit to review the constitutionality of its state laws versus- There's not any statutes that the United States, that I'm aware of, was required to follow and that if we hadn't followed them, there wouldn't be appropriate notice given or abandonment. They're required to follow the constitution. And that's what we're here to figure out. Let me ask you this then. Have you cited any cases where this court has said that the police power extends beyond the time when the government needs the property that it has seized? It seemed to me that all of our cases have addressed, at least implicitly, the government's initial seizure, which you focus on, and keeping the property only as long as the government had a proper purpose. Have we ever said that as long as it was proper exercise of the police power up front, the government could hold on to the property indefinitely? No, Your Honor. And I don't think any of the trilogy of cases that discuss takings related to a search warrant would support that either. So the United States is certainly of the mind that there is a limit to the police power. But you don't contend, for instance, that we cannot agree with the Third Circuit? We have no cases that bind us, that prevent us from agreeing with what the Third Circuit articulated in the Frayne case. Your Honor, I think in Frayne, there was certainly arguments and holdings made that were in accordance with Amerisource and Acadia, that property seized may be held so long as it has an evidentiary purpose. I think an evaluation that the court didn't necessarily go into, that it needed to, is that when we're looking at the taking for public use. And I don't think the Frayne court had any analysis on that very important and critical point. It said it was basically obviously taken for public use, the initial seizure for criminal investigation there. Is it your contention that our law is different on that point? I think it narrows what a taking is in a way that Acadia, Amerisource, and Cam Elmaz had not. But I think our case and the facts of our case can still be commensurate with that taking because we did release a hold and we released custody in our interest 10 days before Mr. Jenkins was sentenced and when it no longer served an evidentiary purpose. I see that I am nearing the end of my time, so I will rest and respectfully request that you affirm the district court's opinion unless you have further questions. Thank you, counsel. Mr. Bruton, you have three minutes. Three points, your honors. One on preservation. Do you agree that if the property was abandoned, if there were a finding that the property was abandoned by the defendant, that there would be no takings claim? If there was a factual finding which there wasn't here, that Mr. Jenkins abandoned the property, then there would not be a property interest in the claim. That directly contradicts the factual finding that the magistrate made that the United States isn't challenged. That dovetails perfectly. Which factual finding is that? Again, which factual finding? And by the way, you may not know, it's magistrate judge. It's not just magistrate. Oh, excuse me. Excuse me for the error, your honor. So on Appendix 8, this is the first full paragraph on the page. Jenkins is established by a preponderance of the evidence that he had an ownership interest in both vehicles under a precedent in the Eighth Circuit. But that's not a finding that he didn't abandon that interest. So the government has the burden to stay within the exception. Abandonment would be part of that. So the government didn't argue below or argue in its brief here that Mr. Jenkins abandoned the property. So that argument is waived or forfeited at the very least. That's different than saying the district court already made a finding. Would you agree with that? There is no finding on abandonment. Our position is the finding we pointed to, but I understand the position, your honor. And we would point the point then to a waiver or forfeiture. And would say at the very least, the court would have to remand for a factual finding on abandonment. And to go into the other arguments that weren't raised below, this venue 41G issue, not raised below, the government participated in the rule 41G proceedings. And again, didn't argue that in its brief here. Didn't argue what? That specifically that the rule 41G has to be in a separate jurisdiction than the district. And then on the fact on notice, if the district court has an interest, or excuse me, if this court has an interest, they can pick up the cars. All that was cited to the motions in 2017. And again, the district court, I'll point you to appendix 17 through 19. Specifically on 17, when discussing these proceedings, this is the block quote. The court says that Jenkins proceeding, pro se, moved to return a property. The United States responded that it would return the property, including the two vehicles, if there are no other claims. In light of the United States response, the court found that Mr. Jenkins moved for reconsideration, so on through these appendix sites. So those are the factual findings that are here. If there's a paucity of factual findings on any issue, it's a remand issue. And again, on the authority point, there's been no authority in over 200 years of constitutional jurisprudence that would allow a taking like this. This court should not be the first one to recognize it. We respectfully ask this court to reverse and remand for a just compensation hearing. Thank you, counsel. The case is submitted.